IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOE ALVIAR, JR.,                    §
                                    §
                Plaintiff,          §
                                    §      Civil Action No. 3:16-CV-1633-D
VS.                                 §
                                    §
MACY'S INC., et al.,                §
                                    §
                Defendants.         §

MEMORANDUM OPINION
AND ORDER

In this diversity action alleging claims for discrimination, retaliation, and failure to

accommodate, in violation of the Texas Commission on Human Rights Act ("TCHRA"),[1]

Tex. Lab. Code Ann. § 21.001, *et seq.* (West 2015), defendants move to dismiss for lack of

subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) based on a failure to exhaust

administrative remedies and also move for summary judgment. Concluding that plaintiff

failed to exhaust his administrative remedies as to two of his claims, the court dismisses these

claims without prejudice. As to plaintiff's remaining claim, the court grants defendants'

motion for summary judgment and dismisses this action by judgment filed today.

---

[1]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541
(N.D. Tex. July 11, 2007) (Fitzwater, J.): "'Chapter 21 was entitled the Texas Commission
on Human Rights Act until the abolishment of the Commission on Human Rights. In 2004,
the "powers and duties" of the Commission on Human Rights were transferred to the Texas
Workforce Commission Civil Rights Division.'" *Id.* at *1 n.1 (quoting *Tex. Dep't of Criminal
Justice v. Guard*, 2007 WL 1119572, at *2 n.3 (Tex. App. 2007, no pet.) (not designated for
publication)). As in *King*, the court for clarity will refer to these claims as brought under the
TCHRA.

I

Plaintiff Joe Alviar Jr. ("Alviar") served in the United States Army from 2004 until 2013.[2] During his service, Alviar was twice deployed to Iraq, where he served as a tank and truck gunner, and was deployed to Afghanistan, where he served as an infantry squad leader. After he was honorably discharged, Alviar was diagnosed with post-traumatic stress disorder ("PTSD"). Alviar contends that his PTSD interferes with his short term memory and his ability to feel safe.

Around February 3, 2013 defendant Macy's Retail Holdings, Inc. ("MRHI") hired Alviar for the position of Asset Protection Manager at the Macy's store at Ridgmar Mall in Fort Worth, Texas. In April 2014 Alviar was promoted to the position of Asset Protection Manager at the Macy's store at the Irving Mall in Irving, Texas. Alviar contends that, despite his PTSD, he performed well in his position as Asset Protection Manager, receiving high performance reviews from February 2014 through January 2015 and receiving an award for Store of the Month for six months, including in March and April 2015.

In February 2014 District Director of Asset Protection John Lillard ("Lillard") became Alviar's supervisor. Around April 2015 Lillard became aware that Alviar suffered from

[2]In deciding defendants' summary judgment motion, the court views the evidence in the light most favorable to Alviar as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

PTSD,[3] and Alviar shared with Lillard the symptoms he suffered as a result of his PTSD, including nightmares, trouble concentrating, and a lack of short term memory.  Alviar requested a reasonable accommodation for his PTSD, asking if he could take notes in his meetings with Lillard, but he contends that Lillard denied this request.

Lillard met with Alviar several times between October 2014 and August 2015 to discuss perceived deficiencies in Alviar's performance and Alviar's repeated violations of company policy, including MRHI's Fitting Room Thefts Policy and MRHI's Criminal Prosecution Guidelines.  Alviar contends that, on three occasions in 2015, Lillard asked him "[w]ith your medical disability are you sure you can even handle Irving?"  P. Br. 6.  Lillard also told Alviar in June 2015 that he was upset that Alviar did not show emotion, even though Alviar told him it was the side effect of prescription medication for his PTSD.

On August 14, 2015 Lillard notified Alviar that the leadership within MRHI's Associate Relations, Human Resources, and Asset Protection departments was greatly concerned with Alviar's policy violations and other performance deficiencies and that his employment was being suspended immediately pending further investigation and discussion. Defendants contend that Julia Bachmann, MRHI's Regional Director of Associate Relations, and Debbie Atkins ("Atkins"), MRHI's District Director of Human Resources, with input from Lillard and two others, decided to terminate Alviar's employment based on the severity of Alviar's team's recently-discovered violations of the Criminal Prosecution Guidelines,

_____

[3]Macy's District Director of Human Resources,Debbie Atkins, was also aware that Alviar suffers from PTSD.

- 3 -

along with his numerous other performance deficiencies (including his deficient leadership and follow through with his detectives, failure to approve prosecution decisions and calls to the police by detectives, and failure to review case reports to ensure company policies were being followed).

On August 19, 2015 Lillard and Atkins informed Alviar that his employment had been terminated. Lillard testified that he terminated Alviar's employment because Alviar "failed to follow Lillard's directions, failed to properly supervise his team, failure to take appropriate action with issues involving his team, organizational issues, administrative issues and allowing associates to prosecute shoplifting cases without Alviar's approval." P. Br. 5 (citing P. App. 93). Alviar was replaced by Javier Ibarra, who does not suffer from PTSD.

Alviar sued Macy's, Inc. ("Macy's"), MRHI, and Lillard in state court, alleging claims under the TCHRA for discrimination, failure to accommodate, and retaliation. Alviar also sued Lillard, individually, on a claim for tortious interference with contract. In *Alviar v. Macy's Inc.*, 2016 WL 5870973 (N.D. Tex. Oct. 7, 2016) (Fitzwater, J.) (*"Alviar I"*), aff'd *in part, vacated and remanded in part sub nom, Alviar v. Lillard*, 854 F.3d 286 (5th Cir. 2017), the court, *inter alia*, granted Lillard's motion to dismiss and entered a Rule 54(b) final judgment dismissing Alviar's action against Lillard individually.[4] Macy's and MRHI now

---

[4]In *Alviar I* the court dismissed Alviar's action against Lillard with prejudice by Rule 54(b) judgment. On appeal, the Fifth Circuit held that once the court determined that Lillard was improperly joined, it effectively dismissed Alviar's claim against him *without prejudice*, and it remanded with instructions to vacate the dismissal *with prejudice. Alviar v. Lillard*, 854 F.3d 286, 292 (5th Cir. 2017). On remand, this court entered an amended judgment dismissing Alviar's claims against Lillard without prejudice.

move for summary judgment on all of Alviar's claims. They also move, in the alternative, to dismiss Alviar's retaliation and failure to accommodate claims under Rule 12(b)(1) on the ground that Alviar failed to exhaust his administrative remedies as to these claims. Alviar opposes the motions.

## II

Macy's and MRHI move under Rule 12(b)(1) to dismiss Alviar's TCHRA retaliation and failure to accommodate claims on the ground that Alviar failed to exhaust his administrative remedies as to these claims and that the court therefore lacks subject matter jurisdiction over them.

## A

Before suing an employer under the TCHRA, an aggrieved employee must first exhaust his administrative remedies by filing a complaint with the Texas Workforce Commission ("TWC") "not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code Ann. § 21.202(a) (West 2015); *see also Schroeder v. Tex. Iron Works, Inc*., 813 S.W.2d 483, 486 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010). The Supreme Court of Texas has held that this 180-day time limit is "mandatory and jurisdictional." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Schroeder*, 813 S.W.2d at 486. The Fifth Circuit has also "characterized § 21.202 as mandatory and jurisdictional." *Ajayi v. Walgreen Co.*, 562 Fed. Appx. 243, 245 (5th Cir. 2014) (per curiam) (citing *Jones v. Grinnell Corp*., 235 F.3d 972, 974-75 (5th Cir. 2001); *Pegram v. Honeywell,*

*Inc.*, 361 F.3d 272, 281 (5th Cir. 2004); *Williams v. Merck & Co.*, 381 Fed. Appx. 438, 444

(5th Cir. 2010)).[5]

---

[5]It is unclear whether, under Texas law, exhaustion of administrative remedies is still treated as "jurisdictional." *See, e.g., Black v. Dall. Cnty. Cmty. Coll. Dist.*, 2017 WL 395695, at \*4 n.7 (N.D. Tex. Jan. 30, 2017) (Fitzwater, J.) (comparing cases). Alviar cites *In re United Services Automobile Ass'n*, 307 S.W.3d 299, for the proposition that "[i]t is questionable that failure to exhaust administrative remedies is jurisdictional." P. Br. 16. In that case, however, the Supreme Court of Texas held only that the two-year statute of limitations for filing suit in an employment discrimination action is not a jurisdictional prerequisite to suit. *United Servs. Auto. Ass'n*, 307 S.W.3d at 310. It did not address whether the 180-day deadline imposed by § 21.202 is similarly non-jurisdictional. *See id.* The Supreme Court of Texas explicitly declined to address the question in *Prairie View A & M University v. Chatha*, 381 S.W.3d 500, 510 n.15 (Tex. 2012) ("Because we conclude section 21.202 is a statutory prerequisite to suit under section 311.034, and is thus a jurisdictional requirement under that section, we need not decide whether section 21.202 itself is jurisdictional in nature."). In the years since *United States Automobile Association* was decided, Texas courts of appeals have continued to hold that § 21.202 is a jurisdictional prerequisite to suit. *See, e.g., Univ. of Tex. at Austin v. Kearney*, 2016 WL 2659993, at \*3 (Tex. App. May 3, 2016, pet. denied) (mem. op.) ("Before filing suit in state court under the TCHRA, an employee must first exhaust her administrative remedies by filing a complaint with the TWC within 180 days of the alleged discriminatory act, and failure to do so is a jurisdictional defect."); *Boswell v. Ector Cnty. Indep. Sch. Dist.*, 2016 WL 1443606, at \*4 (Tex. App. Apr. 7, 2016, pet. denied) (mem. op.) ("Failure to exhaust administrative remedies creates a jurisdictional bar to proceeding with the claim." (citation omitted)); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475 (Tex. App. 2013, pet. denied) ("Under Texas law, the exhaustion of administrative remedies is a mandatory prerequisite to filing an action under TCHRA, and the failure to exhaust TCHRA's administrative remedies deprives the court of subject matter jurisdiction."); *but cf. Reid v. SSB Holdings, Inc*., 506 S.W.3d 140, 147 (Tex. App. 2016, pet. filed) (stating "while we agree that the Texas Supreme Court has not expressly overruled its holding in *Schroeder* that failure to exhaust administrative remedies under the TCHRA is a jurisdictional defect to bringing a civil suit, we also note that subsequent decisions by the court cast some doubt on the continued viability of that holding," but not reaching the issue); *Yeh v. Chesloff*, 483 S.W.3d 108, 113 (Tex. App. 2015, pet. denied) ("We frame the issue regarding a failure to comply with Chapter 21's administrative exhaustion requirement as a defense to liability, rather than a jurisdictional bar."). "Absent a clear holding from the Texas Supreme Court departing from this view, or a statutory change, [this court is] bound by the existing precedent on this statutory provision." *Ajayi*, 562 Fed. Appx. at 246 (citation omitted).

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party files a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). If, however, defendant supports its motion with affidavits, testimony, or other evidentiary materials, then the attack is "factual," and the burden shifts to Alviar to prove subject matter jurisdiction by a preponderance of the evidence. *Id.*

B

Macy's and MRHI maintain that the court lacks subject matter jurisdiction over

---

Moreover, even assuming *arguendo* that § 21.202 is merely an affirmative defense to Alviar's TCHRA claims—rather than a jurisdictional bar—defendants have established, beyond dispute, that Alviar failed to exhaust his administrative remedies with respect to his TCHRA claims for retaliation and failure to accommodate.

Alviar's TCHRA retaliation and failure to accommodate claims because he failed to exhaust his administrative remedies with the TWC before filing suit. They posit that, when Alviar filed his charge of discrimination on November 10, 2015, he did not check the "Retaliation" box or fill in the date of the alleged retaliation; he did not include in his charge any complaints of retaliation or facts showing that he engaged in a protected activity and suffered an adverse employment action as a consequence; he did not check the "Reasonable Accommodation" box on the TWC's intake questionnaire; he did not include in his charge the term "reasonable accommodation" or any allegations relating to any alleged failure to accommodate; and he listed August 19, 2015 as the "Date of First Harm," which was after his termination. Defendants thus argue that it is clear that Alviar's charge relates solely to his claim of disability discrimination based on his termination, and that because Alviar failed to exhaust his administrative remedies for his TCHRA retaliation and failure to accommodate claims, these claims must be dismissed pursuant to Rule 12(b)(1).

Alviar responds that it is questionable whether under Texas law failure to exhaust administrative remedies is jurisdictional; that making a request for a reasonable accommodation and engaging in the interactive process is a protected activity for purposes of his retaliation claim; that the TWC requested that he identify what accommodations his employer had provided him; that he indicated to the TWC-Civil Rights Division that he had requested a reasonable accommodation but that it was refused; and that "not only could Alviar's request for an accommodation, which is a protected activity, reasonably be expected to grow out of his charge of discrimination, but such request for a reasonable accommodation

- 8 -

was in fact a part of the investigation of Alviar's charge." P. Br 17.

C

Under Texas law, courts are to construe complaints filed under TCHRA liberally and "look slightly beyond [the] four corners, to [the] substance rather than [the] label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Nonetheless, the charge must "contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App. 2008, pet. denied) (citing *Preston v. Tex. Dep't of Family & Protective Servs.*, 222 Fed. Appx. 353, 356 (5th Cir. 2007) (per curiam)). "'The crucial element of a charge of discrimination is the factual statement contained' in the administrative complaint." *Id.* (quoting *Preston*, 222 Fed. Appx. at 356). The scope of a suit under the TCHRA is limited to the scope of the investigation that "can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *Bartosh*, 259 S.W.3d at 322. In other words, the plaintiff is constrained to claims that are "like or related to" the allegations contained in the charge. *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App. 2009, no pet.) (citation omitted).

Alviar maintains that he requested a reasonable accommodation to take notes in meetings with Lillard due to the short-term memory issues caused by his PTSD, and that Lillard refused. He appears to contend that this request for an accommodation was protected activity under the TCHRA and that defendants retaliated against him for requesting a reasonable accommodation of his disability. Nothing in Alviar's charge, however, even

construed liberally, would have put defendants on notice that Alviar intended to bring a claim for retaliation or for failure to accommodate based on his request to take notes during meetings with Lillard. Nor can it be said that either of these claims could "reasonably be expected to grow" out of the charge of discrimination. *Pacheco*, 448 F.3d at 789. In the charge that Alviar filed with the TWC on November 10, 2015, he alleged discrimination on the basis of disability. He did not check the box for "retaliation." Ds. App. 13. He listed the date the discrimination took place as August 19, 2015 (the date Alviar was terminated). Under the heading "Personal Harm," Alviar described being "subjected to different terms and conditions than my coworkers and discharge[d] as a result of my PTSD[.] Director of Asset Protection, John Lillard expressed hostility and asked me inappropriate questions such as was I sure I could handle the job." *Id*. In his "Discrimination Statement," Alviar stated: "I believe I have been discriminated against in violation of [the TCHRA], and the Americans with Disabilities Act, as Amended because of my disability (PTSD)." *Id*. These allegations clearly describe discrimination in the form of termination on the basis of Alviar's PTSD.[6] Nowhere in Alviar's Charge does he mention any request for an accommodation or any act of retaliation.[7]

_____

[6]The stated dates of discrimination (beginning and ending on August 19, 2015) further support the conclusion that Alviar's charge encompassed only a claim for discrimination based on his termination; not an additional claim for failure to accommodate during the months preceding Alviar's termination.

[7]Assuming *arguendo* that defendants had notice of Alviar's intake questionnaire and that the court is permitted to consider it, the questionnaire similarly fails to mention any request for accommodation or act of retaliation. Although Alviar was given the option of

In his response, Alviar relies on a request for information sent to his attorney by the TWC and his response to this request, contending that "not only could Alviar's request for an accommodation, which is a protected activity, reasonably be expected to grow out of his charge of discrimination, but such request for a reasonable accommodation was in fact a part of the investigation of Alviar's charge." P. Br. 17. Alviar's reliance on these documents, however, is misplaced.

First, there is no indication that defendants received either of the documents on which Alviar relies prior to discovery in this lawsuit. Letters exchanged only between the TWC and Alviar's counsel could not reasonably have put *defendants* on notice that Alviar intended to pursue claims for retaliation or failure to accommodate. *See Tex. Dep't of Aging & Disability Servs. v. Lagunas*, ___ S.W.3d ___, 2017 WL 728368, at *6 (Tex. App. Feb. 24, 2017, no pet.) ("we liberally construe the administrative charge to determine whether it contains an

---

checking the boxes for various types of retaliation, he checked only the boxes related to disability. He also failed to check the "Reasonable Accommodation (R6)" box. In his written explanation of his "First Harm," Alviar stated:

> I have PTSD as a result of my service in the Army. I was terminated from my position as Asset Protection Manager by District Director of Asset Protection John Lillard. Previously Mr. Lillard had expressed hostility to my PTSD. Including "with your medical disability are you sure you can handle [Irving?"]

Ds. App. 26. This explanation describes discrimination resulting in a termination; it does not describe any failure to accommodate or retaliation for asking for accommodations. Nor could such claims have reasonably been expected to grow out of the information included in the TWC Form.

adequate factual basis to put *the employer* on notice of the existence and nature of the charges." (emphasis added)).

Second, in the letter that Alviar's attorney sent to the TWC, it is alleged that Lillard *did* provide an accommodation, at least to the extent of giving Alviar written instructions, as he had requested.

> Mr. Alviar requested an accommodation for his PTSD. Mr. Alviar's PTSD condition causes problems with his short-term memory. Mr. Lillard would instruct Mr. Alviar not to take written notes during meetings. Mr. Alviar's practice was to take notes in order to remember things he was told. *Mr. Alviar asked Mr. Lillard to provide him written instructions as a reasonable condition for his PTSD condition. By email July 25, 2015, Mr. Lillard emailed Mr. Alviar eleven instructions in response to this request.* A copy of the email is enclosed.

P. App. 196 (emphasis added). Accordingly, even if the court were to consider the content of Alviar's attorney's letter to the TWC, nothing in the letter would reasonably put defendants on notice that Alviar intended to pursue claims for retaliation or failure to accommodate.

The court concludes that Alviar has failed to establish that he exhausted his administrative remedies with respect to his claims under the TCHRA for retaliation and failure to accommodate. Accordingly, the court grants defendants' motion under Rule 12(b)(1) and dismisses these claims without prejudice for lack of subject matter jurisdiction.

### III

The court next considers defendants' motion for summary judgment on Alviar's remaining claim for disability discrimination under the TCHRA.

A

Because Alviar will bear the burden of proof on his claim for disability discrimination, defendants can meet their summary judgment obligation by pointing the court to the absence of admissible evidence to support the claim in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once they do so, Alviar must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Alviar's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

B

The TCHRA prohibits discrimination in employment based on "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code Ann. § 21.051 (West 2015). A plaintiff bringing a discrimination claim under the TCHRA can prove discrimination through direct or circumstantial evidence. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). "The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id.* But because direct evidence of discrimination is often "hard to come by," the plaintiff can also

rely on circumstantial evidence using "the burden-shifting mechanism of *McDonnell Douglas*." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005) (confirming that *McDonnell Douglas* burden-shifting analysis applies to discrimination claims brought under the TCHRA).

As modified, the *McDonnell Douglas* framework consists of three stages. First, Alviar must establish a prima facie case of discrimination, which "creates a presumption that [MRHI] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Alviar may establish a prima facie case under the TCHRA by showing (1) he has a disability, (2) he was qualified for the job, (3) he was subjected to an adverse employment action on account of his disability, and (4) he was replaced by or treated less favorably than non-disabled employees. *Drechsel v. Liberty Mut. Ins. Co.*, 2017 WL 3575259, at *4 (5th Cir. Aug. 17, 2017) (per curiam) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)).[8]

Second, if Alviar establishes a prima facie case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the employment action taken against

---

[8]Texas courts of appeal have held that to establish a prima facie case of disability discrimination, a plaintiff must show (1) he has a disability; (2) he was qualified for the job; and (3) an adverse employment decision was made because of his disability. *See, e.g., Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 436-37 (Tex. App. 2016, pet. denied); *Tex. Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 156 (Tex. App. 2015, no pet.). Because Alviar maintains that the prima facie requirements as set out in *Drechsel* apply here, and because the outcome is the same under either formulation, the court will assume that the four-element prima facie case set out in *Drechsel* applies.

him.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Defendants' burden

is one of production, not proof, and involves no credibility assessments.  *See, e.g., West v.

Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).  Defendants' "burden requires

the production of admissible evidence in support of its nondiscriminatory reasons."  *Hervey

v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (race

discrimination case) (citing *Burdine*, 450 U.S. at 255).

Third, once defendants have produced evidence of a legitimate, nondiscriminatory

reason for the adverse employment action, "the presumption of discrimination created by

[Alviar's] prima facie case disappears," *Machinchick*, 398 F.3d at 350, and "the burden shifts

back to [Alviar] to make an ultimate showing of intentional discrimination," *Campbell v.

Zayo Grp., LLC*, 2015 WL 3903539, at *3 (N.D. Tex. June 25, 2015) (Fitzwater, J.) (quoting

*Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)); *see also Reeves v. Sanderson

Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  To do so, Alviar must prove "either (1)

the reason stated by the employer was a pretext for discrimination, or (2) the [employer's]

reason, while true, was only one reason for its conduct and discrimination is another

motivating factor ('mixed motive')."  *Reed*, 701 F.3d at 439-40 (citations omitted).

These three steps constitute the *McDonnell Douglas* framework.  "Although

intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against

the plaintiff remains at all times with the plaintiff.'"  *Reeves*, 530 U.S. at 143 (quoting

*Burdine*, 450 U.S. at 253).

C

The court will assume *arguendo* that Alviar can establish all of the elements of his prima facie case of disability discrimination under the TCHRA.[9] *See, e.g., Barnard v. L-3 Commc'ns Integrated Sys. L.P.*, 2017 WL 3726764, at *8 (N.D. Tex. Aug. 30, 2017) (Fitzwater, J.) (assuming *arguendo* that plaintiff had established prima facie case where plaintiff failed to meet her burden to create genuine issue of material fact on issue of pretext).

D

The court turns now to the second stage and determines whether Macy's and MRHI have met their burden of production. Defendants have met this burden because their evidence shows that MRHI had a legitimate, nondiscriminatory reason for terminating Alviar's employment. They have adduced evidence that MRHI terminated Alviar's employment because his performance as the Asset Protection Manager was deficient and because he violated MRHI policies. "Violation of company policy is a legitimate, nondiscriminatory reason for termination." *Harris v. Dall. Cnty. Hosp. Dist.*, 2016 WL 2914847, at *10 (N.D. Tex. May 19, 2016) (Fitzwater, J.) (citing *Mendez v. Dollar Tree*

_____

[9]Defendants contend that Alviar cannot establish the third element of his prima facie case of disability discrimination (i.e., that there was a causal connection between his disability and his termination) because the evidence shows that his termination was the result of his own performance deficiencies, not his PTSD. Alviar disputes that causation is a required element of his prima facie case. Because the court ultimately concludes that a reasonable jury could not find that Alviar's disability was a motivating factor in his termination, it assumes *arguendo* that Alviar can meet the low prima facie burden. *See, e.g., Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *12 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.) ("[E]stablishing a prima facie case is not onerous[.]"), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

*Stores, Inc.*, 114 Fed. Appx. 149 (5th Cir. 2004) (per curiam)).

E

Because Macy's and MRHI have met their burden of production, the burden shifts back to Alviar to present evidence that would enable a reasonable jury to find that MRHI's reason is pretextual or that MRHI's reason, while true, was only one reason for its conduct and that discrimination was another motivating factor.

1

Defendants contend that MRHI terminated Alviar's employment solely because of his deficient performance; that Alviar repeatedly admitted to his own performance deficiencies, including failing to approve prosecutions and notification of the police by his detectives (which violated MRHI's Criminal Prosecution Guidelines), failing to review case reports, and failing to complete detective touch bases; that there is no evidence that MRHI was motivated to terminate Alviar's employment *because* he has PTSD; and that, on the contrary, the evidence shows that MRHI terminated Alviar's employment because of his deficient performance.

In response, Alviar contends that there is ample evidence of pretext. He maintains that Lillard asked him on several occasions whether with his PTSD disability he could even handle the Irving position, even though Alviar received a "Solid Meets Expectations" performance review just a few months prior, and that Alviar's department was named Store of the Month six times, including in March and April 2015; that Lillard commented that he did not like how Alviar did not show emotion, which was a side effect of the prescription

medication Alviar took for his PTSD; that evidence that Macy's regarded Alviar's performance as good demonstrates that the articulated reasons for Alviar's termination lack credence; that any suggestion that Alviar was not providing leadership or was otherwise not performing was belied by the performance review of Alviar provided by Macy's; that Lillard's stated reason for terminating Alviar (i.e., that Alviar let investigators approve prosecutions without his approval) is false; that Alviar's store had better inventory results than other stores, but he was the only Asset Protection Manager terminated for inventory issues; that there was close temporal proximity between Alviar's disclosure of his PTSD in April 2015 and his August 2015 termination; that Audon Benavides ("Benavides") was subject to retaliation shortly after providing a statement supportive of Alviar that was presented in a TWC hearing in which Alviar asserted that he was terminated because of his PTSD; that Lillard has expanded the reasons for Alviar's termination during the course of this litigation; and that Lillard provided all of the information regarding Alviar's termination, concurred in the decision to terminate, and informed Alviar of his termination such that Lillard can be regarded as the titular decisionmaker in this case.

2

Alviar contends that MRHI's purported legitimate, nondiscriminatory reason for his termination lacks credence because the evidence shows that MRHI regarded Alviar's performance as good and because any suggestion that Alviar was not providing leadership or was otherwise not performing was belied by MRHI's performance review of Alviar. The court concludes that a reasonable jury could not find, based on Alviar's February 2015

performance review, that MRHI's stated reasons for terminating Alviar in August 2015 lack credence.

First, although Alviar received an overall rating of 4.3 out of 7 ("Solid Meets Expectations") on his February 2015 performance review, the review itself describes several perceived performance deficiencies, including, *inter alia*, "[s]hortage results [that] are far too high," P. App. 168; "very poor" award performance, "which is an indication of lack of associate awareness," *id.* at 173; "too much follow-up was needed to get . . . audits in on time," *id.*; and that Alviar "[n]eeded to be a bigger contributor on weekly conference calls and a stronger leader in the district," *id.*

Second, Alviar does not dispute that Lillard did not discover Alviar's violation of MRHI's Criminal Prosecution Guidelines until July/August 2015, almost six months *after* the February 2015 performance review. Given that MRHI terminated Alviar's employment based, in large part, on Alviar's violation of MRHI policies, and that this violation was not discovered until after the February 2015 performance review, a "good" February 2015 performance review does not support the reasonable finding that the reasons given for Alviar's August 2015 termination lack credence.

Third, defendants offer evidence—which Alviar does not dispute[10]—that on several

_____

[10]Alviar objects to Lillard's declaration, contending that it is a sham affidavit that contains statements contrary to his deposition testimony, citing as an example ¶ 10 of Lillard's declaration, which Alviar contends is contrary to Lillard's deposition. The court overrules this objection. The "sham affidavit" rule, which prevents a party from defeating a motion for summary judgment "using an affidavit that impeaches, without explanation, sworn testimony," *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996), does

occasions between October 2014 and August 2015, Lillard met with Alviar to discuss perceived deficiencies in Alviar's performance, including, for example, Alviar's violation of MRHI's Fitting Room Thefts Policy and the following deficiencies, all of which were addressed on March 24, 2015, before Alviar informed Lillard of his PTSD diagnosis:

> (1) failing to complete projects timely; (2) a lack of aggressiveness in working internal cases; (3) failing to notify [Lillard] of changes to his work schedule; (4) a lack of involvement in store rallies; (5) poor office organization; (6) failing to manage his team of detectives with regard to returning merchandise that was in the Asset Protection office back to the sales floor; (7) failing to fully use his team to drive his program and message in the Irving store; (8) a lack of attention to detail concerning shortage in the Irving store; (9) failing to conduct required walks with the Irving Store Manager; (10) failing to meet with the Irving store's Receiving Dock Manager as [Lillard] had directed him to; (11) failing to turn in the required weekly planner; and (12) failing to use the Macy's My Store application to drive awareness among store associates.

Ds. App. 135-36. Thus even if Lillard did receive a generally "good" performance review in February 2015, the summary judgment evidence would only enable a reasonable jury to find that, in the months following that performance review (including in March 2015, before Lillard knew of Alviar's PTSD diagnosis), Lillard met with Alviar on numerous occasions to discuss perceived deficiencies in Alviar's performance. Thus Alviar has not created a genuine issue of fact that MRHI's proffered explanation for his termination lacks credence.

---

not apply in the context of defendants' motion for summary judgment. Moreover, even if this court were inclined to apply the doctrine to the affidavit of a summary judgment movant, Alviar has pointed to only one paragraph that he contends is inconsistent with Lillard's deposition testimony. He does not specifically object to any of the other statements in Lillard's declaration.

Alviar contends that Lillard showed "bias towards [his] protected characteristic," by asking Alviar on "several occasions" whether with his PTSD disability he could even handle the Irving position and by commenting that he did not like how Alviar did not show emotion, which was a side effect of the prescription medication Alviar took for his PTSD. P. Br. 12.[11]

The court holds that a reasonable jury could not find, based on Lillard's isolated comments,

---

[11]Alviar argues in a footnote that Lillard's "derogatory statements about Alviar's PTSD is most likely direct evidence." P. Br. 12 n.4. The court disagrees. Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Where a plaintiff offers remarks as direct evidence, [this court] appl[ies] a four-part test to determine whether they are sufficient to overcome summary judgment." *Reed*, 701 F.3d at 441. The "[remarks] must be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (alterations and internal quotation marks omitted) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)); *see also Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *3 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.) ("'Such evidence typically involves statements made by the employer or certain of its personnel that indicate that an employment decision was based on a forbidden factor.'"(quoting *Bowe v. Exide Corp.*, 2001 WL 705881, at *3 n.1 (N.D. Tex. 2001) (Fitzwater, J.))). Alviar does not mention, much less address, the four factors the court uses to determine whether a supervisor's comments constitute direct evidence of discrimination. In any event, at a minimum, a reasonable jury could not find that when Lillard first learned that Alviar had been diagnosed with PTSD, his questioning whether Alviar could handle the Irving position, or his later comment that he disliked how Alviar did not show emotion, related to MRHI's decision in August 2015 to terminate Alviar's employment based on his perceived performance deficiencies and violation of company policy. Alviar's contention that "[a] finder of fact could easily *infer* hostility to Alviar's PTSD disability from these comments of Lillard," P. Br. 12 (emphasis added), confirms that ascertaining Lillard's discriminatory intent requires an inference or presumption. Accordingly, the statements are not direct evidence of discrimination. *See, e.g., Sandstad*, 309 F.3d at 897-98.

that Lillard showed "hostility to Alviar's PTSD disability," *id.*, as Alviar maintains.

As a preliminary matter, regarding the first statement, a reasonable jury could not find "hostility" in Lillard's asking Alviar whether, given his diagnosis of PTSD, he would be able to handle the position of Asset Protection Manager in the Irving location. Regarding Lillard's comment that he did not like the fact that Alviar did not show emotion, Alviar provides no evidence that Lillard knew, prior to his comment, that Alviar's lack of emotion was related to his PTSD or the medication he took to treat his PTSD. Regardless, to the extent Alviar intends to rely on these comments as circumstantial evidence of pretext, "'[s]tray remarks are insufficient to enable a claim to survive summary judgment when a plaintiff fails to produce substantial evidence of pretext.'" *Conaty v. Brocade Commc'n Sys., Inc.*, 2009 WL 937044, at *11 (N.D. Tex. Apr. 7, 2009) (Fitzwater, C.J.) (quoting *Read v. BT Alex. Brown, Inc.*, 2002 WL 22060, at *4 (N.D. Tex. Jan. 7, 2002) (Fitzwater, J.)). Because Lillard's remarks do not relate to the decision to terminate Alviar and are unaccompanied by substantial evidence of pretext, they are insufficient to rebut MRHI's legitimate, nondiscriminatory reason for terminating Alviar's employment.

4

Defendants contend that Alviar was terminated because, *inter alia*, his performance was deficient, including failing to approve prosecutions and calls to police by his detectives. MRHI's Criminal Prosecution Guidelines provide: "The [Asset Protection Manager] must approve all prosecution decisions. The [Asset Protection Manager] will make the final decision on exercising one of the prosecution exceptions. Staff level Asset Protection

associates must obtain [Asset Protection Manager] approval prior to calling the police." Ds. App. 173. Defendants contend that Lillard discovered in August 2015 that Alviar had failed to approve prosecutions and had failed to approve notification of the police by detectives, both of which were extremely serious violations of MRHI's Criminal Prosecution Guidelines. They adduce evidence that Alviar "acknowledged that he was aware that two of his detectives had previously prosecuted approximately five shoplifting cases without obtaining his approval, and that he took no written corrective action at any time but instead just told them not to do it again." Ds. App. 140. Although Alviar argues in his response that "Benavides testified that he, [and two others] told Lillard that Alviar approved any shoplifting prosecutions, contrary to Lillard's assertion," P. Br. 13, he does not dispute that, on August 5, 2015, he admitted to Lillard that he had violated MRHI's Criminal Prosecution Guidelines by permitting detectives to notify the police and prosecute shoplifting cases without obtaining his approval. Nor does he offer any evidence that would enable a reasonable jury to find that Lillard did not actually believe, based on Alviar's August 5, 2015 admission, that Alviar had violated MRHI policy. *See Chamblee v. Miss. Farm Bureau Fed'n*, 551 Fed. Appx. 757, 760 (5th Cir. 2014) (per curiam) ("[O]ur analysis of whether an alleged violation of an employer's policy is a pretext for discrimination does not turn on whether the employee in fact violated the policy, but rather whether the employer reasonably believed the employee violated the policy and acted based on that belief." (citing *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993))); *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) ("The inquiry is not

- 23 -

whether [the plaintiff] actually committed the alleged infraction, but whether YTI believed that he had and based its decision to discharge him on that belief" (citation omitted)), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012 ). Accordingly, Alviar's evidence that he did not actually violate MRHI's Criminal Prosecution Guidelines is insufficient to enable a reasonable jury to find pretext.

5

Alviar maintains that evidence that demonstrates that Benavides was subject to retaliation shortly after providing a statement in support of Alviar—a statement that was presented in a TWC hearing in which Alviar asserted that he was terminated because of his PTSD condition—is evidence that Alviar's disability was a motivating factor in MRHI's decision to terminate Alviar. The court disagrees. Alviar has not adduced any evidence that would enable a reasonable jury to find that defendants were aware that Alviar had offered Benavides' statement in support of his claim for unemployment benefits with the TWC. Moreover, assuming *arguendo* that a reasonable jury could find that Benavides was subjected to retaliation after Alviar submitted his statement, a reasonable jury could *not* find, based on the summary judgment evidence, that defendants retaliated against Benavides because Alviar's disability was a motivating factor in MRHI's decision to terminate Alviar. The most a reasonable jury could find is that defendants retaliated *against Benavides* for engaging in activity protected under the TCHRA.

6

Alviar contends that his store had better inventory results than other stores, but that

he was the only Asset Protection Manager terminated for inventory issues. Disparate treatment can create a genuine issue of material fact as to pretext, but to create such a genuine issue, Alviar must adduce evidence that would enable a reasonable jury to find that MRHI gave "preferential treatment to another employee under 'nearly identical' circumstances." *Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)) (Title VII case). "In discrimination cases, [the court] compare[s] the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff." *Sandstad*, 309 F.3d at 901 (citing *Okoye*, 245 F.3d 507). The circumstances are not "nearly identical" when the difference between the plaintiff's circumstances and the circumstances of those alleged to be similarly situated accounts for the difference in treatment received from the employer. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). "The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical.'" *Dotson v. Gulf*, 2006 WL 44071, at *7 (S.D. Tex. Jan. 9, 2006) (citing *Okoye*, 245 F.3d at 514-15). Alviar has not pointed to any other Asset Protection Manager who did not have PTSD, whose conduct was "nearly identical" to Alviar's, and who was treated more favorably than Alviar.

7

Alviar contends that Lillard has expanded the reasons for Alviar's termination, stating

one set of reasons in his deposition and enlarging his set of reasons in his declaration. In Lillard's deposition, he testified that MRHI terminated Alviar's employment for the following reasons:

> he failed to perform the essential functions of the job and his responsibilities, including failure to follow my direction; failure to properly supervise his team; failure to take appropriate action with issues involving his team; organizational issues; administrative issues; various different things along those lines. . . . And then certainly at the end of the process was violation of company policy; allowing his associates to prosecute shoplifting cases; and also not upholding his function of properly approving case reports.

P. App. 93. Alviar contends that ¶ 10 of Lillard's declaration is contrary to this deposition testimony. But in ¶ 10, Alviar describes the deficiencies in Alviar's performance *that he identified on June 30, 2015. See* Ds. App. 137. Elsewhere in his declaration, Lillard identifies the reasons for Alviar's termination, stating that Alviar's "employment had been terminated due to his deficient performance, including *among other things* his failure to approve prosecution decisions and calls to the police by detectives, failure to review case reports to ensure company policies are being followed, and deficient leadership and follow through with his detectives." Ds. App. 142 (emphasis added). A reasonable jury could not find that the reasons Lillard gave during his deposition for terminating Alviar's employment were substantially different from the ones included in Lillard's declaration.

8

Finally, Alviar contends that there was close temporal proximity between when Lillard learned that Alviar had PTSD (April 2015) and when he was terminated (August

2015).  But the close temporal proximity between an employee's termination and the employer's initial notice of the employee's disability cannot alone establish pretext.  *See EEOC v. AccentCare Inc*., 2017 WL 2691240, at *9 (N.D. Tex. June 21, 2017) (Fitzwater, J.) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("Timing standing alone is not sufficient absent other evidence of pretext." (internal quotation marks omitted)).  Because Alviar has not presented any evidence of pretext, other than the fact that he was terminated four months after he informed his supervisor that he has PTSD, this temporal proximity would not alone enable a reasonable jury to find that MRHI's proffered reasons for Alviar's termination are pretextual or that Alviar's PTSD was a motivating factor in his termination.

9

In sum, the most Alviar has done is create a weak fact issue as to whether MRHI's proffered reasons for his termination—deficient performance and violation of company policy—were the real reasons.  "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is . . . correct.'"  *Reeves*, 530 U.S. at 146-47 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524).  "In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'"  *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519). Aside from the facts that Lillard knew that Alviar had been diagnosed with PTSD, that Lillard asked Alviar whether he could handle the Irving position

with his PTSD, and that Alviar was terminated four months after Lillard learned that Alviar had PTSD, Alviar presents no evidence that would enable a reasonable jury to find that his disability motivated MRHI's decision to terminate his employment. ion for summary judgment on this claim.[12]

\* \* \*

Accordingly, for the reasons explained, the court grants defendants' motion to dismiss Alviar's TCHRA failure to accommodate and retaliation claims and dismisses these claims without prejudice. The court grants defendants' motion for summary judgment on Alviar's TCHRA disability discrimination claim and dismisses this claim with prejudice.

**SO ORDERED**.

October 19, 2017.

                                          _____
                                          SIDNEY A. FITZWATER
                                          UNITED STATES DISTRICT JUDGE

---

[12]Because the court is granting defendants' motion to dismiss Alviar's TCHRA retaliation and failure to accommodate claims and their motion for summary judgment on Alviar's TCHRA discrimination claim, it does not address defendants' contention that Macy's is entitled to summary judgment on Alviar's claims because it did not employ Alviar.